IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:19-CR-00281 |
| | : | |
| v. | : | (Judge Wilson) |
| | : | |
| CESAR RODRIGUEZ-AREVALO, | : | (Electronically Filed) |

## DEFENDANT'S REPLY BRIEF

## I.   INTRODUCTION

In *Arlington Heights,*[1] the Supreme Court established two criteria necessary to establish a race-based equal protection challenge: (1) the legislature that enacted the law was motivated in part by racial animus, and (2) the law disparately impacts one race. Mr. Rodriguez-Arevalo has met these criteria by setting out the sordid history behind the unlawful reentry statute, which is enforced almost exclusively against Latinxs. The Government opposes Mr. Rodriguez-Arevalo's motion. Within the Government's opposition brief are several flaws addressed in this reply.

***First*,** the Government argues that because §1326 concerns immigration, the Court is bound to apply a lesser standard of review. In the Government's view,

---

[1] *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-68 (1977).

courts are essentially required to uphold criminal immigration laws no matter how obvious and odious the racial animus behind the law. This is not so.

**Second**, the Government, here, will not concede that the Undesirable Aliens Act of 1929 was enacted with a discriminatory animus, even though numerous courts have so held, and other United States Attorneys' offices around the country agreed. The Government also disagrees that Latinxs have been disparately impacted by this law, a premise rejected by many courts.

**Third,** if this Court does determine that racial animus was a motivating factor in enacting the statute, the Government argues that it does not matter because later Congresses cured the law by amending it. However, the later Congresses were either equally motivated by racism or failed to address the racist and nativist origins of §1326.

Each of these arguments is easily dispatched. First, §1326 is not shielded from strict scrutiny review simply because it relates to immigration. Courts are not forbidden from assessing whether a criminal law is racially motivated; to the contrary, courts' role in our system of government is precisely to determine whether laws enacted by legislatures offend the Constitution. Second, the 1929 Act was enacted with a discriminatory purpose and has disparately impacted Latinxs– this finding is clear and needs little more discussion. Third, the Congresses that

recodified and amended §1326 did not cure the law of racial animus. Rather, those Congresses were themselves acting with the same animus and failed to engage the law's racist history. Consequently, the discriminatory taint of the statute's origins remains alive and well.

Because Congress acted with racial animus when it criminalized reentry, and because almost all prosecutions under §1326 are against Latinxs, Mr. Rodriguez-Arevalo asks the Court to find that §1326 violates the Fifth Amendment's equal protection guarantee. *See U.S. v. Carrillo-Lopez,* --- F.Supp.3d ---, 2021 WL 3667330 at *4, 2021 U.S. Dist. LEXIS 155741 (D. Nev. Aug. 18, 2021).

## II.   DISCUSSION

### A.   Applicable Standard of Review

The Government asks the Court to forgo a strict scrutiny analysis and instead apply the "facially legitimate and bona fide" test,[2] asserting that courts in the Third Circuit are cabined to rational basis review when considering laws concerning immigration or naturalization. *See* Gov't Opp., p. 8.

---

[2] Government Opposition, ECF No. 24, at p. 14 (hereinafter short-cited as "Gov't Opp."). The Government notes that the "facially legitimate and bona fide" test is "analytically equivalent to the rational basis test normally applied in equal protection cases." *See Breyer v. Meissner*, 214 F.3d 416, 422-23 n.6 (3d Cir. 2000).

Mr. Rodriguez-Arevalo does not dispute that Congress has plenary authority over matters of immigration. However, the Supreme Court itself has noted that Congress's "plenary power to create immigration law . . . is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). Regardless of Mr. Rodriguez-Arevalo's citizenship status, relevant constitutional limits apply "because 'all persons within the territory of the United States are entitled to equal protection' of the Constitution." *Id*. at 694 (quoting *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Matthews v. Diaz,* 426 U.S. 67, 77 (1976) (recognizing that the Fifth Amendment protects all individuals "within the jurisdiction of the United States," even those "whose presence in this country is unlawful.").

Further, several district courts, including one in the Third Circuit, have determined that heightened review under *Arlington Heights* is the appropriate standard of review applied here. *See United States v. Wence*, No. 3:20-cr-27; 2021 U.S. Dist. LEXIS 112805, at *5-6, 2021 WL 2463567 (D. V.I. June 16, 2021) ("[T]he Court can find no support for the proposition that criminal laws, enacted by Congress, even when they are enacted in furtherance of Congress's broad immigration power, are otherwise immune from . . . upholding a right so fundamental as the equal protection of this nation's laws."); *see also United States v. Machic-Xiap*, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 145037, at *26, 2021

4

WL 3362738 (D. Or. Aug. 2, 2021) ("The Government's assertion that the Court
has little role in policing the Fifth Amendment's boundaries in a case where the
defendant faces risk of imprisonment is without merit."); *United States v. Rios-
Montano*, 2020 U.S. Dist. LEXIS 230122, at *7, 2020 WL 7226441 (S.D. Cal.
Dec. 7, 2020) (applying *Arlington Heights* to §1326 challenge); *United States v.
Sanchez-Feliz*, 2021 U.S. Dist. LEXIS 246343, at *12-13, 2021 WL 6125407 (D.
Colo. Dec. 28, 2021) (same); Carrillo-*Lopez*, 2021 U.S. Dist. LEXIS 155741, at
*7, 2021 WL 3667330 (finding that §1326 "must be reviewed under the *Arlington
Heights* equal protection framework.").

Lastly, in positing that undocumented aliens are not a suspect class, *see*
Gov't Opp., p. 9, the Government appears to misapprehend Mr. Rodriguez-
Arevalo's contention. To be clear, the suspect class at issue in this matter is race
and national origin, not immigration status. The Court should apply *Arlington
Heights* in its consideration of Mr. Rodriguez-Arevalo's motion.

## B.    Discriminatory Purpose

The Government will not concede that the Undesirable Aliens Act of 1929
was enacted with a discriminatory purpose, notwithstanding that district courts

around the country have uniformly held that it was.[3] In any event, the Government argues that the racial animus behind the 1929 Act does not matter, because the 1952 recodification was not racially motivated, nor were the subsequent amendments of §1326. However, the 1952 recodification was also infected with racial animus, and the taint of the racism behind the 1929 Act was never cleansed from subsequent amendments of §1326.

With respect to the 1929 Act, the Government argues that the legislative intent does not carry "over from one law to the next." Gov't Opp., p. 14. This assertion is contrary to the Supreme Court's instruction that "in construing [a statute] we may refer to the **purpose** and scope of the act from which it was derived." *United States v. Mason*, 218 U.S. 517, 525 (1910) (emphasis added); *see also United States v. Ryder*, 110 U.S. 729, 740 (1884) ("[i]t will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed.").

---

[3] *See United States v. Munoz-De La O,* 2022 U.S. Dist. LEXIS 29868 at *28-29, 2022 WL 508892 (E.D. Wa. Feb. 18, 2022); *United States v. Hernandez-Lopez,* -- F. Supp. 3d --, 2022 U.S. Dist. LEXIS 18649, at *4, 2022 WL 313774 (S.D. Tex. Feb. 2, 2022) (collecting cases "acknowledg[ing] the racial animus behind the 1929 law"); *Wence,* 2021 U.S. Dist. LEXIS 112805, at *16-18; *United States v. Sequilanda*, 2021 U.S. Dist. LEXIS 202398, at *15, 2021 WL 4895956 (S.D.N.Y. Oct. 20, 2021) ("the 1929 Undesirable Aliens Act, a precursor to the modern-day Section 1326, . . . was undoubtedly enacted in the face of bald racial animus towards Hispanic people.").

Once a challenger has established discriminatory intent, "the burden shifts to the law's defenders to demonstrate that the law would have been **enacted** without" the motivating factor of discrimination. *Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (emphasis added). Given this framework, the relevant question is whether the Congress that **enacted**, not amended, the unlawful reentry statute would have done so absent racial animus.

Importantly, the 1952 Congress did not engage with the 1929 Act's racist history. It simply shifted the unlawful reentry statute to a different section of the U.S. Code as part of the McCarran-Walter Act's consolidation of immigration laws, tweaking the language to make it easier to prosecute that crime. Because racial animus motivated the 1929 Congress to criminalize reentry under the Undesirable Aliens Act, and because the 1952 Congress simply recodified the law at §1326 without engaging with its discriminatory intent, there is no need for the Court to assess the McCarran-Walter Act under *Arlington Heights*. However, should the Court assess the McCarran-Walter Act, it's clear that racial animus was a motivating factor, as set forth at length in the opening brief. *See* ECF No. 20, pp. 31-41.

Further, none of the amendments to §1326 required Congress to reconsider the decision to criminalize reentry. Quite the opposite. The amendments expanded

the pool of individuals who could be punished, stiffened penalties, and limited collateral attacks on removal orders – all ensuring more Latinxs would be incarcerated for more time. The amendments "do not reflect any change to Congressional intent, policy, or reasoning, but merely work to increase Section 1326's deterrent value." *Carrillo-Lopez,* 2021 U.S. Dist. LEXIS 155741, at *61. Finally, and critically, "there has been no attempt at any point to grapple with the racist history of Section 1326 or to remove its influence on the legislation." *Id*.

Given the foregoing, Mr. Rodriguez-Arevalo has established that §1326 was enacted with a discriminatory purpose.

## C.    Disparate Impact

In his opening brief, Mr. Rodriguez-Arevalo provides statistics establishing that the enforcement of §1326 disparately impacts Latinxs. *See* ECF No. 20, pp. 8-9, n. 11-13. Despite the compelling numbers, the Government contends that the statistics are a "feature of Mexico's proximity to the United States – not discrimination." ECF No. 24, p. 17.

The Government's argument misapprehends the import of prior Supreme Court rulings regarding disparate impact. The Supreme Court described disparate impact as an action that "bears more heavily on one race than another." *Arlington Heights*, 429 U.S. at 266 (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)).

"The statistical evidence provided, which the Government does not refute, easily demonstrates that Latinxs are more heavily burdened by the enforcement and prosecution of §1326 violations." *Munoz-De La O*, 2022 U.S. Dist. LEXIS 29868, at \*24-25 (reasoning that the Government's proffered "geography" explanation does not undermine the proffered statistics demonstrating disparate impact); *Sanchez-Feliz*, 2021 U.S. Dist. LEXIS 246343, at \*12-13 (defendant established §1326 disparately impacts Mexican and Latin American defendants because, between 2013 and 2019, 98% of illegal reentry defendants were Hispanic).

The statistical evidence presented demonstrates disparate impact, which is a finding the Court must make separate and apart from the requirement of a discriminatory purpose. Thus, while Mexico's proximate geography to the United States might have some bearing on the numbers presented, it is not all encompassing. When the statistics are considered in conjunction with discriminatory purpose behind §1326 and its predecessors, the twin prongs of the *Arlington Heights* analysis are established by a preponderance of the evidence.

## III.   CONCLUSION

Mr. Rodriguez-Arevalo understands that numerous district courts across the nation have denied similar motions. However, he has carried his burden under *Arlington Heights,* and respectfully asks this Honorable Court join the Honorable Miranda M. Du of the District of Nevada in finding that §1326 violates the Fifth

Amendment's equal protection guarantee. *See Carrillo-Lopez*, 2021 U.S. Dist.

LEXIS 155741, 2021 WL 3667330.


Respectfully submitted,


Date:  April 14, 2022                         */s/ Ari D. Weitzman*

ARI D. WEITZMAN, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA81927
100 Chestnut Street, 3rd Fl.
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*ari_weitzman@fd.org*
*Attorney for Cesar Rodriguez-Arevalo*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari D. Weitzman, Esquire, Assistant Federal Public Defender, do hereby certify that I served a copy of the foregoing **Defendant's Reply Brief**, via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

JOANNE SANDERSON, ESQUIRE
*joanne.sanderson@usdoj.gov*


CESAR RODRIGUEZ-AREVALO


Respectfully submitted,

Date:  April 14, 2022

*/s/ Ari D. Weitzman*
ARI D. WEITZMAN, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA81927
100 Chestnut Street, 3rd Fl.
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*ari_weitzman@fd.org*
*Attorney for Cesar Rodriguez-Arevalo*